[S. F. No. 9163. Department Two.—March 2, 1920.]

In the Matter of the Guardianship of JOHN IMPERATRICE et al., Minors.

[1] GUARDIANSHIP OF MINORS — RIGHT OF SURVIVING MOTHER — EVIDENCE—EXCEPTION TO RULE.—In this proceeding by the mother of three minors, whose father was dead, to obtain the revocation of an order appointing another person the guardian of their persons and estates and her own appointment as such guardian, the evidence shows the case falls squarely within the exception to the rule, that unless some good reason exists based upon what appears to be the best interests of the children the surviving parent is entitled to be appointed their guardian.

[2] ID.—GUARDIANSHIP OF CHILDREN—CONTROLLING CONSIDERATIONS.—In resolving the question of the guardianship of children, the court is controlled by what appears to be for their best interest in respect to their temporal and moral welfare, and when a child is of sufficient age to form an intelligent preference, the court may consider that preference in determining the question.

[3] PARENT AND CHILD—PRIMARY RIGHT OF PARENTS TO CUSTODY OF CHILDREN—EXCEPTION.—While primarily the parents of a child have the right, by nature and statutory enactment, to its custody, which right should be freely recognized in the absence of compelling reasons for its disregard, yet whenever conditions are shown to be such, by reason of the mental and moral limitations or delinquency of parents, that to allow the child to continue in their custody would be to endanger its permanent welfare, this right of the parent must give way, its preservation being of less importance than the health, safety, morals, and general welfare of the child.

APPEAL from an order of the Superior Court of Fresno County denying an application for revocation of letters of guardianship. M. F. M'Cormick, Judge. Affirmed.

The facts are stated in the opinion of the court.

George E. Church for Appellant.

Thomas F. Lopez for Respondent.

1. Right of parent to appointment as guardian of minor child, note, 33 L. R. A. (N. S.) 869.

3. Right of parent to custody of child, note, 2 Am. St. Rep. 183.

KERRIGAN, J., *pro tem.*—This is an appeal from an order denying the petition of Rosa Conte for the revocation of an order theretofore made appointing one Beulah E. Miller guardian of the persons and estates of certain minor children.

In her petition the appellant, Rosa Conte, alleges that she is the mother of the three children therein named, and that their father, her former husband, is now deceased; that the latter left a small estate in which each of said children is entitled to share; that on the twenty-seventh day of March, 1918, the appellant was declared incompetent and committed to the Stockton State Hospital, where she remained as an inmate until the seventeenth day of March, 1919, when she was, by a certificate duly issued, restored to capacity; that the day after she was so restored to competency Beulah E. Miller, the respondent, after a hearing, was regularly appointed guardian of the persons and estates of said children. Upon these allegations the petitioner prayed that said order appointing respondent such guardian be rescinded and annulled, and that the said children be returned to her as their mother entitled to their custody.

The respondent, answering the said petition, admitted that the minors are the children of appellant, who was declared incompetent and later, as alleged, restored to capacity, and that she, the respondent, was appointed guardian of said minors. Continuing, said respondent alleged that the appellant is not a fit or proper person to have the care and control of said children; that her present husband is not a proper person to assist in the instruction or care of said children, and that if appellant should be given their care and custody and the control of their property, the latter, on account of appellant's incompetency and inability to care therefor, would come into the control of her said husband, who would improperly expend and waste it. She further alleged that she is experienced in the care and handling of children, and that in the exercise of the authority theretofore conferred upon her she had placed said children in proper homes with good environment, where they will receive proper care and education. She therefore prayed that her said letters of guardianship be not revoked.

[1]  At the hearing had upon said petition and answer the appellant merely put in evidence the certificate of restoration to capacity, and rested, relying upon the rule that unless some good reason exists based upon what appears to be the best interests of the children she, as their surviving parent, is entitled to be appointed their guardian.  (21 Cyc. 34; *Guardianship of Salter,* 142 Cal. 412, [76 Pac. 51]; *In re Campbell,* 130 Cal. 380, [62 Pac. 613].)  The difficulty at the bottom of appellant's case, however, is that the evidence in the record shows that it falls squarely within the exception to the above rule, according to which exception the welfare of the children must be given priority in certain cases over the otherwise natural right of the parent.  According to the testimony of Ella M. Towle, a probation officer of the county in which the present matter arises, these children were neglected by their mother.  Her testimony shows that in November, 1917, she found them ragged and dirty and two of them running the streets; that with the consent of their mother she placed them in the county orphanage.  Another witness, Mrs. Rebecca M. Carter, matron of the county orphanage, testified that the children were extremely dirty and their heads full of lice.  The children remained in the orphanage from December, 1917, to May, 1918.  Two of them—boys, one fourteen and the other thirteen years of age—were called as witnesses upon the inquiry, and they both expressed their preference that Miss Miller act as their guardian, and stated that they would not like to return to the life they endured with their mother and stepfather; that under her supervision good homes were provided for them; that they were able to keep clean, were properly clothed, and could go to school regularly.  These boys also testified that their former home environment was bad; that their stepfather had an ungovernable temper; that on one occasion, in the presence of the younger boy, he shook his fist at their mother and threatened to break her head; on another occasion in essaying to strike her he missed and hit the boy's sister, and on another occasion threw a knife at the witness.

This testimony, like all the other evidence in the case, was uncontradicted and appears to have been given free from suggestion, nor was its force impaired by cross-examination. The respondent testified that the children had been boarding

in homes under the supervision of the county welfare department, and any expenses incurred on their behalf had been borne by the county treasury. One of the boys, being over fourteen years of age, was permitted, subject to the approval of the court, to nominate his own guardian (Code Civ. Proc., sec. 1748); the other boy was thirteen years old at the time of the trial, and showed himself to be of sufficient capacity to express an intelligent preference (Civ. Code, sec. 246). As to the little girl, she was not called as a witness, and the record is silent as to her, except it appears that she is permitted to be with her mother from time to time, and on such occasions assists in the housework. The mother of these children, unfortunately, is unable to give them the care and proper home environment necessary for their welfare, and if left with her and their stepfather disastrous results for the future of these children may reasonably be apprehended. In addition to what has been said, it also appeared upon the hearing of the petition that the estate of the father of the children is about to be distributed, giving rise to the necessity for the appointment of a guardian of their estate.

[2] When resolving the question of the guardianship of children the court is controlled by what appears to be for their best interest in respect to their temporal and moral welfare; and when a child is of sufficient age to form an intelligent preference the court may consider that preference in determining the question. This rule requires no citation of authority. [3] And while primarily the parents of a child have the right, by nature and statutory enactment, to its custody, which right should be freely recognized in the absence of compelling reasons for its disregard, yet whenever conditions are shown to be such, by reason of the mental and moral limitations or delinquency of parents, that to allow the child to continue in their custody would be to endanger its permanent welfare, this right of the parent must give way, its preservation being of less importance than the health, safety, morals, and general welfare of the child. (21 Cyc., p. 35.)

The order is affirmed.

Wilbur, J., and Lennon, J., concurred.